IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § § § § | 1:14cr33-HSO-BWR-1 |
| OLADIMEJI SEUN AYELOTAN | § | |

**ORDER DENYING DEFENDANT OLADIMEJI SEUN AYELOTAN'S MOTION [1159] FOR COMPASSIONATE RELEASE**

**BEFORE THE COURT** is Defendant Oladimeji Seun Ayelotan's Motion [1159] for Compassionate Release. For the reasons that follow, the Motion [1159] should be denied.

I. BACKGROUND

A.  Ayelotan's conviction and sentence

Defendant Oladimeji Seun Ayelotan ("Ayelotan"), a citizen of Nigeria residing in South Africa, was charged along with numerous co-Defendants in a Second Superseding Indictment [156] with three conspiracy charges (Counts 1, 2, and 9) and six different violations of 18 U.S.C. §§ 2 and 1341 (Counts 3 through 8). *See* 2d Superseding Indictment [156] at 4-32. Ayelotan was part of a conspiracy of "more than 200 members worldwide, with the leadership based in Nigeria and South Africa," which "organization carried out multiple different types of schemes, each of which had the purpose of fraudulently obtaining money or goods from U.S.-based victims." PSR [861] at 15 (filed under seal). Among the fraud schemes perpetrated

by the conspirators were romance, advance-check, reshipping, postage-label, and account-takeover scams, as well as money laundering. *See id.* at 15-17.

Ayelotan and two of his co-Defendants elected to proceed to a jury trial. On February 7, 2017, the jury convicted Ayelotan of the charges in Counts 1, 2, 3, 4, and 9 of the Second Superseding Indictment. *See* Verdict Form [788] at 1-8.[1] Specifically, he was convicted in Count 1 of conspiring to commit mail fraud, wire fraud, and money laundering to unlawfully enrich the conspirators "by conducting multiple complex financial fraud schemes via the internet," including "internet romance scams, fraudulent check scams, bank and credit card account take overs, and work at home scams." 2d Superseding Indictment [156] at 4-26. The charge in Count 1 was punishable by a term of imprisonment of not more than 30 years. *See id.*; 18 U.S.C. §§ 1341, 1343, 1344, 1349.

Ayelotan's conviction in Count 2 was for conspiring to commit identify theft as prohibited by 18 U.S.C. § 1028(a)(7), use of unauthorized access devices as prohibited by §§ 1029(a)(3) and 1029(a)(5), and theft of Government funds as prohibited by 18 U.S.C. § 641, all in violation of 18 U.S.C. § 371. This conviction carried a maximum term of imprisonment of five years. *See* 2d Superseding Indictment [156] at 26-29; 18 U.S.C. §§ 371, 1028, 1029.

With respect to Counts 3 and 4, the jury found that Ayelotan committed mail fraud by knowingly and unlawfully causing to be delivered by the United States Postal Service and private and commercial interstate and foreign carriers certain

---

[1] Counts 5, 6, 7, and 8 were dismissed at trial upon the Government's Motions. *See* Order [777] at 1; Order [786] at 1.

items, including two BlackBerry Torch smartphones (Count 3) and a check for $3,000.00 (Count 4). *See* 2d Superseding Indictment [156] at 30-31. Counts 3 and 4 were each punishable by a maximum of 20 years imprisonment. *See id.*; 18 U.S.C. § 1341.

Finally, Ayelotan was convicted in Count 9 of conspiring to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 2. *See* 2d Superseding Indictment [156] at 31-32. Specifically, he knowingly conducted and attempted to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity— bank, wire, and mail fraud. *See id.* at 32. This conviction carried a maximum sentence of 20 years imprisonment. *See id.*; 18 U.S.C. § 1956.

To assist the Court in sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). *See* PSR [861] (filed under seal). Based upon a total offense level of 43 and a criminal history category of I, Ayelotan's Guidelines imprisonment range would have been life. *See id.* at 64. However, because the statutorily authorized maximum sentences for each count of conviction, which combined, were less than the maximum of the Guidelines range, the Guidelines range was reduced to 1,140 months. *See id.* (citing U.S.S.G. § 5G1.2(b)). Following a lengthy sentencing hearing, the Court sentenced Ayelotan to a total of 1,140 months of imprisonment, consisting of terms of 360 months as to Count 1, 60 months as to Count 2, and 240 months as to each of Counts 3, 4, and 9, all to run consecutively. *See* J. [877] at 3.

Ayelotan and his two co-Defendants appealed, and the United States Court of Appeals for the Fifth Circuit affirmed in all respects. *See United States v. Ayelotan*, 917 F.3d 394, 399 (5th Cir.), *as revised* (Mar. 4, 2019). The United States Supreme Court denied Ayelotan's petition for a writ of certiorari on October 7, 2019. *See* Ex. [1009] at 1. He then filed a Motion [1026] and an Amended Motion [1041] to Vacate under 28 U.S.C. § 2255, which the Court denied. *See* Order [1124]; J. [1125]. Ayelotan did not appeal.[2]

Ayelotan, who is now 39 years old, is presently incarcerated at Federal Correctional Institutional ("FCI") Ray Brook in Ray Brook, New York. *See* Env. [1159-6] at 2; PSR [861] at 3 (filed under seal). With a projected release date of May 2, 2094, he has served approximately 27% of his sentence. *See* J. [877] at 3; Bureau of Prisons ("BOP") Inmate Locator, https://www.bop.gov/inmateloc/ (stating "Release Date: 05/02/2094" for "OLADIMEJI SEUN AYELOTAN," Register Number: 18371-043) (last visited Aug. 20, 2024).

B.  Ayelotan's Motion [1159] for Compassionate Release

Proceeding pro se, on June 17, 2024, Ayelotan filed the present Motion [1159] for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). *See* Mot. [1159]. He argues that there are extraordinary and compelling reasons supporting his release, citing his rehabilitation, unusually long sentence, and purported disparities in sentencing. *Id.* at 4-5, 9, 14-25. According to Ayelotan, if sentenced today, he

---

[2] While his § 2255 Motion [1026] and Amended Motion [1041] were pending, Ayelotan filed on September 27, 2021, a Motion [1076] for Compassionate Release related to the COVID-19 pandemic, *see* Mot. [1076] at 1, which the Court denied, *see* Order [1100] at 10. Ayelotan appealed, *see* Notice [1103], but the Fifth Circuit affirmed, *see* Op. [1121].

4

"would have received a significantly reduced sentence . . . under current law." *Id.* at 12. Ayelotan further contends that the § 3553 factors favor reducing his sentence and granting his immediate release. *See id.* at 13-25.

The Government opposes the Motion [1159], arguing that Ayelotan has not shown any extraordinary and compelling reasons warranting his release, and that the factors set forth at 18 U.S.C. § 3553(a) weigh against it. Resp. [1164] at 6. According to the Government, while commendable if true, Ayelotan's rehabilitation does not constitute an extraordinary and compelling reason, and it is insufficient to warrant compassionate release. *Id.* at 6-7. The Government takes the position that the length of Ayelotan's sentence is not an extraordinary and compelling reason, as "Ayelotan fails to provide any examples of any changes in law (either by way of statutes or court decisions) which would validate this claim." *Id.* at 7. To the extent Ayelotan relies upon U.S.S.G. § 1B1.13(b)(6), which defines such a reason to include an "unusually long sentence," the Government contends that "this provision exceeds the Sentencing Commission's authority and conflicts with § 3582(c)(1)'s clear meaning," such that the Court should not rely upon § 1B1.13(b)(6). *Id.* at 8. According to the Government, Ayelotan's sentence was reasonable, and his dissatisfaction with it does not constitute an extraordinary and compelling reason for compassionate release. *Id.* at 29. Moreover, the § 3553 factors weight against his early release. *Id.* at 29-33.

Ayelotan replies that "the disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary

5

and compelling reason to release him," as "few federal offenders have received life sentences in recent years." Reply [1165] at 1. Because he has served at least ten years of the sentence, Ayelotan contends that the Court may consider a non-retroactive change in the law if it will produce a "gross disparity" between his sentence and the sentence he would likely receive now. *Id.* at 4 (citing U.S.S.G. § 1B1.13(b)(6)); *see id.* at 4-10. Finally, Ayelotan maintains that based upon his history and characteristics, the § 3553 factors favor granting his Motion [1159]. *Id.* at 10-11.

## II. DISCUSSION

A. Relevant legal authority

18 U.S.C. § 3582(b) provides that a judgment of conviction constitutes a final judgment, although it can be modified pursuant to the provisions of 18 U.S.C. § 3582(c). At issue in this case is a requested modification under § 3582(c)(1)(A)(i), which states in relevant part as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The Fifth Circuit has held that

> a prisoner seeking compassionate release must overcome three hurdles. First, "extraordinary and compelling reasons" must justify the reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Second, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). Finally, the prisoner must persuade the district court that his early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

*United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022).

The applicable Sentencing Commission policy statement provides that extraordinary and compelling reasons may exist when certain circumstances, alone or in combination, are present. *See* U.S.S.G. § 1B1.13(b) (2023). Those include certain medical conditions of the defendant; defendant being housed at a facility affected, or at imminent risk of being infected, by an ongoing outbreak of an infectious disease or a public health emergency; defendant's age and "experiencing a serious deterioration in physical or mental health because of the aging process"; defendant's family circumstances; defendant being a victim of abuse; or other reasons that "are similar in gravity." U.S.S.G. § 1B1.13(b)(1)-(5) (2023).

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6) (2023).

Otherwise, "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G. § 1B1.13(c) (2023). But if a defendant is able to establish that an extraordinary and compelling reason warrants a sentence reduction, "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.* Similarly,

> [p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(d) (2023).

B.  Analysis

The Government has not raised any failure-to-exhaust on the part of Ayelotan, *see* Resp. [1164], so the Court may proceed to consider Ayelotan's Motion [1164] on its merits. Having reviewed the record here, the Court finds no extraordinary and compelling reason justifying a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13(b) (2023).

Ayelotan raises no grounds concerning his medical circumstances, where he is housed, his age, his family circumstances, being a victim of abuse, or other reasons similar in gravity, as contemplated by the policy statement. *See* Mot. [1159]; U.S.S.G. § 1B1.13(b) (2023). Ayelotan's arguments focus on a purported disparity under § 1B1.13(b)(6). *See* Mot. [1159] at 11-12; Reply [1165] at 1. According to Ayelotan, "[t]here's a clear nationwide disparity in the sentence [he] received compared to people who were sentenced for the same offenses." Reply [1165] at 1. Analyzing the § 3553 factors, Ayelotan contends that he would receive a significantly lower sentence today. *Id.*

But Ayelotan has not specifically identified any change in the law that would have made his Guidelines range or resulting sentence any lesser today than it was at the time of sentencing. *See* Mot. [1159]; Reply [1165]. This is required in order for the Guidelines provision Ayelotan cites to apply. *See* U.S.S.G. § 1B1.13(b)(6) (2023) (providing that "a change in the law . . . may be considered"). Ayelotan's sentence remains within the relevant statutory thresholds. Count 1 remains punishable by a term of imprisonment of not more than 30 years, *see* 18 U.S.C. §§ 1341, 1343, 1344, 1349; Count 2 still carries a maximum term of imprisonment of five years, *see* 18 U.S.C. §§ 371, 1028, 1029; and Counts 3, 4, and 9 each remain punishable by a maximum of 20 years imprisonment, *see* 18 U.S.C. §§ 1341, 1956. Run consecutively, these result in a total maximum statutory sentence of 95 years, or 1,140 months, which is the same as in 2016 when Ayelotan was sentenced. Nor has Ayelotan identified any changes in Guidelines provisions since he was

sentenced that would apply to him. *See* Mot. [1159]; Reply [1165]. The Court therefore finds no "gross disparity" between Ayelotan's current sentence and the sentence that was likely to be imposed when his Motion [1159] was filed. *See* U.S.S.G. § 1B1.13(b)(6) (2023).[3]

Nor has Ayelotan identified any factually similar cases showing such a gross disparity with the sentence he received.[4] Ayelotan cites cases from other Districts that he argues demonstrate that his rehabilitation coupled with his "practicaly [sic] life sentence" are sufficient for relief, but those cases are distinguishable. *See* Mem. [1159] at 15 (collecting cases). They involved individualized circumstances beyond the mere length of those defendants' sentences, and included some defendants who were significantly younger than Ayelotan when their crimes were committed, or who were older than him when their motion was filed, or who

---

[3] Much of the Government's Response [1164] discusses whether the Sentencing Commission exceeded its authority in amending U.S.S.G. § 1B1.13(b)(6). *See* Resp. [1164] at 13-28; *but see, e.g., United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) ("It is within a district court's sound discretion to hold that non-retroactive changes in the law, in conjunction with other factors such as extraordinary rehabilitation, sufficiently support a motion for compassionate release."). The Court need not resolve this issue because it finds no "gross disparity" between Ayelotan's sentence and the sentence likely to be imposed when his Motion [1159] was filed. U.S.S.G. § 1B1.13(b)(6) (2023). Ayelotan's sentence was driven by the vast network of his fraud, particularly the number of victims and the amount of money stolen by his worldwide conspiracy, of which he was an organizer or leader. Losses were well in excess of $25,000,000.00. *See* PSR [861] at 22 (filed under unseal); 1st Suppl. Addendum [861-2] at 2 (filed under seal).

[4] The most analogous case of which the Court is aware is that of Ayelotan's co-Defendant, Rasaq Aderoju Raheem, who was sentenced to 1,380 months in prison. *See United States v. Raheem*, No. 1:14cr33-HSO-BWR-3, J. [878] (S.D. Miss. June 5, 2017) (360 months as to Count 1, 60 months as to Count 2, 240 months as to Count 3, 240 months as to Count 4, 240 months as to Count 7, and 240 months as to Count 9). The only difference between Ayelotan's and Raheem's sentences was that Raheem was convicted of an additional charge in Count 7 that the Government dismissed as to Ayelotan. *See* Verdict [788] at 8; Mot. [783]; Order [786].

10

suffered from substantial medical conditions that Ayelotan has not raised. *See, e.g., United States v. Cromitie*, No. 09 CR 558-01 (CM), 2024 U.S. Dist. LEXIS 12253 (S.D.N.Y. Jan. 19, 2024) (granting a motion where a 58-year old defendant had served 15 years of his 25-year sentence and suffered chronic medical conditions); *United States v. Howard*, No. ELH-13-0629, 2024 U.S. Dist. LEXIS 4914, at *6 (D. Md. Jan. 10, 2024) (granting motion in part and reducing sentence for Hobbs Act robbery from 151 months to 131 months of imprisonment but leaving unchanged consecutive 84-month sentence under 18 U.S.C. § 924(c) for defendant who received a career offender enhancement, but would not have been designated a career offender if sentenced at the time he filed his motion under new Fourth Circuit precedent); *United States v. White*, No. 96-cr-1123 (SHS), 2022 U.S. Dist. LEXIS 221701, at *1 (S.D.N.Y.) (Dec. 8, 2022) (granting 56-year-old defendant's motion for compassionate release, who had already served over 25 years in prison, based upon the defendant's rehabilitation, service to his community, length of incarceration, and prison record); *United States v. Espino*, No. 03-20051-08-JWL, 2022 U.S. Dist. LEXIS 174161, at *1 (D. Kan. Sept. 26, 2022) (granting in part motion for compassionate release of defendant serving a life sentence without the possibility of parole after a jury in 2004 found him guilty of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, when an individual who stole drugs from the conspiracy and cooperated with police was murdered, triggering the "murder cross-reference provision" of the Guidelines, and reducing the defendant's sentence to 360 months due to the his young age of 20 at the time of the offense, the

length of his sentence, his extraordinary rehabilitation, and his maturation while in custody); *United States v. Gray,* No. CR CCB-95-364, 2021 WL 1856649, at *1 (D. Md. May 10, 2021) (granting motion for compassionate release of a defendant serving a life sentence "based on underlying health conditions that make him particularly susceptible to serious illness related to COVID-19").  In short, Ayelotan has not shown that his sentence constitutes an extraordinary and compelling reason for sentence reduction.

As for his statements regarding his post-conviction rehabilitation, such rehabilitation "is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d) (2023).  Nor does the Court find that any of the other reasons cited by Ayelotan constitute extraordinary and compelling reasons warranting a sentence reduction.  *See* Mot. [1159]; Reply [1165].

Even if any extraordinary and compelling reasons were present, the § 3553(a) factors weigh strongly against Ayelotan's release.  These factors include, among other things, the nature and circumstances of the offenses of conviction and the history of the Defendant, and the need for the sentence imposed to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public.  *See* 18 U.S.C. § 3553(a).

According to the PSR, based upon a total offense level of 43 and a criminal history category of I, Ayelotan's Guidelines imprisonment range was life.  *See* PSR [861] at 64 (filed under seal).  This range was driven by, among other things, the

enormous loss amount, the number of victims, and Ayelotan's role as a leader or organizer of this massive international fraud conspiracy. But because the statutorily authorized maximum sentences were less than the maximum of the applicable Guidelines range, the Guidelines range was reduced to 1,140 months. *See id.* (citing U.S.S.G. § 5G1.2(b) (2016)). The Court sentenced Ayelotan to a 1,140-month term of imprisonment, followed by five years of supervised release. *See* J. [877] at 3-4.

Ayelotan's current projected release date is May 2, 2094, meaning he has roughly 836 months, or 73%, of his sentence left to serve. *See* J. [877] at 3; BOP Inmate Locator, https://www.bop.gov/inmateloc/ (stating "Release Date: 05/02/2094" for "OLADIMEJI SEUN AYELOTAN," Register Number: 18371-043) (last visited Aug. 20, 2024). The Court considers significant the very serious nature of Ayelotan's offenses of conviction and the relatively short length of time he has served, as well as the vast amount of fraud he perpetrated and the number of people he victimized. Considering the totality of the record before it, the Court finds that releasing Ayelotan from incarceration at this time would not reflect the gravity of his offense, afford a just punishment, protect the public, or afford adequate deterrence. *See* 18 U.S.C. § 3553(a). Ayelotan's Motion [1159] is not well taken and should be denied.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Oladimeji Seun Ayelotan's Motion [1159] for Compassionate Release is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 22nd day of August, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE